# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.D.T.M.,<br><br>    Petitioner,<br><br>    v.<br><br>MINGA WOFFORD, Mesa Verde ICE Processing Center Facility Administrator; POLLY KAISER, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States,<br><br>    Respondents. | No. 1:25-cv-01141-KES-SKO (HC)<br><br>ORDER GRANTING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER<br><br>Doc. 3 |

Petitioner R.D.T.M. is a noncitizen who entered the United States in 2023 as an unaccompanied minor. After entry, she was briefly detained by immigration officials but then released to the care of a sponsor after immigration officials determined that she was neither a danger nor a flight risk. Since then, she has lived with her family in Howard Lake, Minnesota, graduated high school, gained lawful work authorization, worked in childcare services, and volunteered at a church in her community. However, notwithstanding the immigration officials' prior determination that she posed neither a flight risk or danger and the apparent lack of changed circumstances, Immigration and Customs Enforcement ("ICE") agents re-detained her on September 1, 2025.

On September 7, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for a temporary restraining order, Doc. 3.[1] Petitioner seeks an order that immediately releases her from immigration detention and enjoins the government from re-detaining her unless it first provides her with a hearing before a neutral adjudicator where the government must prove by clear and convincing evidence that she is a flight risk or danger to the community. For the reasons set forth below, the Court grants petitioner's motion for a temporary restraining order.

**I.   Background**[2]

In 2023, when she was a minor, petitioner fled Honduras because she had been left there on her own, making her a vulnerable target for physical and sexual violence. Doc. 1 at ¶ 43; *see* Doc. 3-2 at ¶ 5. She had previously lived in the United States, from when she was around seven years old until she was ten years old. *See* Doc. 3-2 at ¶ 5. On January 14, 2023, she crossed the southern border and encountered U.S. immigration officials. *Id.* ¶ 6; Doc. 1 at ¶ 43. The immigration officials detained her for approximately eleven days at a facility for unaccompanied minors. Doc. 3-2 at ¶ 6. On January 26, 2023, immigration officials released her into the custody of her mother. *Id.* The statute that governs the detention of unaccompanied minors encountered at the border, the Trafficking Victims Protection and Reauthorization Act ("TVPRA"), provides that, in making custody determinations, immigration officials should consider "danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(A). In releasing petitioner, immigration officials determined that she was not a flight risk or danger to the community. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176, 1178 (N.D. Cal. 2017) ("[Immigration officials] may release the minor to a "sponsor" . . . so long as the minor is not dangerous . . . . Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the

---

[1] Petitioner also filed a motion to proceed under pseudonym, which was granted by separate order.

[2] This section is based on petitioner's verified petition, declarations, and exhibits. A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)).

1    community or a flight risk." (citing 8 U.S.C. § 1232(c)(2)(A)), *aff'd* 905 F.3d 1137 (9th Cir.
2    2018). On February 11, 2023, the Department of Homeland Security ("DHS") sent petitioner a
3    notice to appear in immigration court for removal proceedings. *Id.*; Doc. 3-3 at 1–3. The notice
4    to appear charged her as removable under 8 U.S.C. § 1182(a)(6)(A)(i) as "an alien present in the
5    United States without being admitted or paroled." Doc. 3-3 at 1–3.

6        Following her release from detention, petitioner went to live with her parents and siblings
7    in Howard Lake, Minnesota, and she established a life there. Doc. 3-2 at ¶ 7. On June 2, 2024,
8    she graduated from Lake-Waverly-Winsted High School. *Id.* After she graduated, she was
9    granted lawful work authorization and worked as a child-care professional at the Howard Lake-
10   Waverly-Winsted Laker Care Program. *Id.*; Doc. 1 at ¶ 10. She also worked as a waitress at a
11   restaurant in Howard Lake. Doc. 3-2 at ¶ 7. She joined St. John's Lutheran Church in Howard
12   Lake and regularly volunteers with church activities. Doc. 1 at ¶ 47. Her positive school,
13   employment, and volunteer work record are described in letters of support from Howard Lake
14   community members. *See* Doc. 1-4 at 2–7.

15       Petitioner indicates that she has maintained a clean criminal record, pursued relief in her
16   removal proceedings, and complied with the requirements of her release. *See* Doc. 1 at ¶¶ 10, 36,
17   47–48, 94. On October 10, 2023, she retained counsel and filed an application for asylum and
18   withholding of removal with United States Citizenship and Immigration Services ("USCIS").
19   Doc. 1 at ¶ 48. An immigration judge administratively closed her removal proceedings due to the
20   pending application for asylum with USCIS. *Id.* Her asylum application remains pending. Doc.
21   3-2 at ¶ 9.

22       On September 1, 2025, over two and a half years after her release, Immigration and
23   Customs Enforcement ("ICE") agents arrested petitioner as she was preparing to board a domestic
24   flight at San Francisco International Airport to return home. Doc. 3-2 at ¶¶ 11. The agents were
25   dressed in plainclothes and did not present her with a warrant. *Id.* They asked for petitioner's
26   identification documents, and she showed them her passport and work authorization permit. *Id.*
27   Agents handcuffed her and took her property. *Id.* ¶ 12. They did not tell her why she was being
28   arrested. *Id.* Agents then held petitioner in an immigration office in San Francisco for

3

1  approximately thirty hours. *Id.* ¶ 13. They stated that she had a prior deportation order in place
2  from when she was a child, but they did not show her the warrant.³ *Id.* ¶¶ 13–14. Petitioner is
3  unaware of any prior deportation order as she left voluntarily when she was ten years old. Doc. 3-
4  2 at ¶ 5.⁴ Petitioner explained to the agents that she had immigration proceedings and had filed
5  an asylum application with USCIS. *Id.* at ¶¶ 13-14. ICE agents then took petitioner in custody to
6  Mesa Verde ICE Processing Center, an immigration detention center in Bakersfield, California,
7  where she remains detained. *Id.* ¶ 14.
8       On September 2, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a
9  motion for temporary restraining order, Doc. 3.

10  **II.     Legal Standard**

11       The standards for issuing a temporary restraining order and a preliminary injunction are
12  "substantially identical." *See Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839
13  n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of
14  right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553
15  U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is
16  likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of
17  preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the
18  public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of*
19  *Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12
20  (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important

---

³ Even if there were a prior order of removal in place, it appears that petitioner would still be entitled to seek asylum. As someone previously determined to be an unaccompanied minor, petitioner is covered by the class action settlement agreement entered in *J.O.P. v. US Department of Homeland Security*, No. 8:19-cv-01944-SAG (D. Md.). Doc. 1 at ¶ 4. That settlement agreement provides that anyone initially determined to be an unaccompanied minor must be permitted to pursue an asylum application with USCIS, even if there is already a final order of removal in place. *See* Doc. 199-2 at ¶ I, *J.O.P. v. US Department of Homeland Security*, No. 8:19-cv-01944-SAG (D. Md. July 30, 2024).

⁴ Petitioner's counsel asserts that she requested petitioner's full immigration file through a Freedom of Information Act request, and that request did not turn up any such deportation order. *Id.*

factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

### III. Discussion

The Court finds that the requirements for issuing a temporary restraining order without notice are met. *See* Fed. R. Civ. P. 65(b). Petitioner notified respondents' counsel on September 7, 2025 that she would be filing the motion, by email to the U.S. Attorney's Office email address for habeas petition filings. *See* Doc. 3-1. While respondents have not appeared or filed a response, petitioner has set out specific facts demonstrating that immediate and irreparable injury, loss, or damage may result before respondents can be heard in opposition. *See Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (granting ex parte temporary restraining order in similar circumstances).

#### a. Petitioner is Likely to Succeed on the Merits.

Petitioner argues that the Due Process Clause bars the government from re-detaining her without first providing a bond hearing. Doc. 4 at 5–11. "Courts analyze [] due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). These two steps are examined in turn.

##### 1. Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may

5

entitle the individual to procedural protections not found in the statute. *See id.* (Due Process requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, her "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if [she] fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected liberty interest in her "continued liberty." *Id.* at 481–84.

Petitioner's release is similar. For over two-and-a-half years, it allowed her to live with her family in Howard Lake and establish a life there. She graduated high school in Howard Lake, became lawfully employed in childcare services and at a restaurant, and volunteered at her church. Immigration officials' release of petitioner in 2023 reflected a determination that she did not pose a flight risk or danger to the community. *See Saravia*, 280 F. Supp. 3d at 1176. Petitioner indicates that she has no criminal record, and that, following her release in January 2023, she complied with her release terms and appeared at all immigration proceedings as required. The government then rearrested petitioner without showing any changed circumstances in this regard, contradicting the "implicit promise that [petitioner's freedom] will be revoked only if [she] fails to live up to the [release] conditions." *Morrissey*, 408 U.S. at 482.

The Court finds that petitioner has a protected liberty interest in her release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). The Court must therefore determine what process is due before the government may terminate her liberty.

### 2. A Pre-Deprivation Bond Hearing Is Required.

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation are evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for over two-and-a-half years, and during that time, began a life in Howard Lake, living with her parents and siblings, finishing school, gaining lawful employment, and volunteering at her church. Her detention denies her that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil

7

1   immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a
2   noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690;
3   *Padilla*, 704 F. Supp. 3d at 1172. Petitioner has no criminal history and indicates she has
4   attended every court hearing and check-in since she arrived in the United States. *See* Doc. 1 at
5   ¶¶ 10, 36, 47–48, 94. Given the absence of any procedural safeguards to determine if her
6   detention was justified, "the probable value of additional procedural safeguards, i.e., a bond
7   hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

8   Third, the government's interest in detaining petitioner without a hearing is "low."
9   *Ortega*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe*, 2025 WL 691664, at *6. In
10  immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL
11  691664, at *6. The government's interest is further diminished where a person "has consistently
12  appeared for her immigration hearings . . . and [] does not have a criminal record." *Pinchi*, 2025
13  WL 1853763, at *2.

14  On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which
15  should have been provided before petitioner was detained. "'[T]he root requirement' of the Due
16  Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived
17  of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542
18  (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127
19  ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some
20  kind of a hearing *before* the State deprives a person of liberty . . . ."). The Supreme Court has
21  held that Due Process requires a pre-deprivation hearing before those released on parole from a
22  criminal conviction can have their bond finally revoked. *See Morrissey*, 408 U.S. at 480–86. The
23  same is true for those subject to revocation of probation. *Gagnon v. Scarpelli*, 411 U.S. at 782.

24  Given the absence of "evidence of urgent concerns," the Court concludes that "a *pre-*
25  *deprivation* hearing [was] required to satisfy due process." *Guillermo M. R.*, 2025 WL 1983677,
26  at *9. Numerous district courts have reached a similar conclusion. *See, e.g.*, *id.*; *Garcia*, 2025
27  WL 1927596, at *5; *Pinchi*, 2025 WL 1853763, at *3–4; *Ortega*, 415 F. Supp. 3d at 970; *Doe v.*
28  *Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025); *Diaz*

8

*v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

With these considerations in mind, petitioner is likely to succeed on the merits.

### b. Petitioner Will Face Irreparable Harm Without Injunctive Relief.

Turning to the second *Winters* factor, petitioner's evidence shows that her detention has caused and will continue to cause irreparable harm. As the Supreme Court has recognized, incarceration "has a detrimental impact on the individual" because "it often means loss of a job" and "disrupts family life." *Barker v. Wingo*, 407 U.S. 514, 532–33 (1972). Petitioner's detention has taken her from her family, her community, and the job she had pursuant to her employment authorization.

Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Thus, petitioner faces irreparable harm absent a temporary restraining order.

### c. Balance of Equities and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Faced with a choice "between [minimally costly procedures] and preventable human suffering," as discussed above, the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in petitioner's favor. "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3)

1  (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817,
2  838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's
3  constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

4  In conclusion, the Court finds that the requirements for issuing a temporary restraining
5  order are met.  Petitioner's immediate release is required to return her to the status quo ante—"the
6  last uncontested status which preceded the pending controversy."  *Pinchi*, 2025 WL 1853763, at
7  *3; *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *2 (E.D. Cal. Mar.
8  10, 2025); *see also Valdez v. Joyce*, 25 Civ. 4627, 2025 WL 1707737, at *5 (S.D.N.Y. June 18,
9  2025) (ordering immediate release of unlawfully detained noncitizen); *Ercelik v. Hyde*, No. 1:25-
10 CV-11007-AK, 2025 WL 1361543, at *15–16 (D. Mass. May 8, 2025) (same); *Günaydın v.
11 Trump*, No. 25-CV-01151, 2025 WL 1459154, at *10–11 (D. Minn. May 21, 2025) (same).
12 Respondents are ordered to release petitioner immediately without requiring bond or electronic
13 monitoring.  Respondents may not re-detain petitioner unless the government proves by clear and
14 convincing evidence at a bond hearing before a neutral decisionmaker that petitioner is a flight
15 risk or danger to the community.

16 The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts
17 regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir.
18 2011); *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4; *Singh*, 2025 WL
19 1918679, at *9.

20 **IV.    Conclusion and Order**

21 Accordingly, petitioner's motion for temporary restraining order, Doc. 3, is GRANTED.
22 Respondents are ORDERED to immediately release petitioner without requiring bond or
23 electronic monitoring.

24 Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless
25 they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a
26 neutral decisionmaker, that petitioner is a flight risk or danger to the community such that her
27 physical custody is legally justified.

28

1    Respondents may move for modification or dissolution of this Order on two (2) days'
2 notice. *See* Fed. Rule Civ. P. 65(b); Local Rule 231(c)(8).
3    Respondents are ORDERED TO SHOW CAUSE before this Court why a preliminary
4 injunction should not issue pending a final disposition of this matter. The hearing on the order to
5 show cause will be held on September 18, 2025, at 2:00 p.m. in Courtroom 6 before District
6 Judge Kirk E. Sherriff. Respondents shall file any response to petitioner's motion by
7 September 15, 2025. Petitioner may file a reply by September 17, 2025. The parties may
8 stipulate to extend the briefing schedule and hearing date, provided that this temporary restraining
9 order remain in effect pending any such continuance.[5]

IT IS SO ORDERED.

Dated:   September 9, 2025

_____
UNITED STATES DISTRICT JUDGE

---

[5] Counsel requesting to appear at the hearing by video appearance shall contact the courtroom deputy at least 24 hours prior to the hearing.

11